UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEITH HEDLUND,

          Plaintiff,                       Case No. 1:22-cv-355

v.                                    Honorable Jane M. Beckering

UNKNOWN JONES et al.,

          Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 6) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Jones, Steiner, and Schmidt. The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment retaliation claim against Defendant Harris. Plaintiff's Eighth Amendment excessive force claim against Defendant Harris remains in the case.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Prisoner Counselor Unknown Jones, Sergeant Unknown Schmidt, and Correctional Officers Unknown Harris and Unknown Steiner.

Plaintiff alleges that on January 13, 2022, Defendant Jones informed inmates assigned to bunks #81, 84, and 86 that they would be moving from H-Unit Level I to G-Unit Level I, which was designated as a "Close Contact Unit." (ECF No. 1, PageID.4.) At the time, Plaintiff was assigned to bunk #84. (*Id.*) Plaintiff tried to explain to Defendant Jones that he could not lock in G-Unit because inmate Vandyken was there. (*Id.*) Inmate Vandyken had been moved to G-Unit on December 15, 2021, a day after coming back to Level I. (*Id.*) Plaintiff told Defendant Jones that he had a "pending [c]ivil [s]uit and that [he] did not want any further problems with prisoner Vandyken." (*Id.*) Plaintiff avers that Defendant Jones began to threaten him about his civil suit, and told Plaintiff that he must do as he is told. (*Id.*) Defendant Jones was angry and "jumped out of his chair and lunged at [Plaintiff] as if he was going to assault" him. (*Id.*) Plaintiff left Defendant Jones' office and returned to his cube. (*Id.*)

Shortly after that incident, Plaintiff was called to move to Level II. (*Id.*) Plaintiff agreed and took a green duffel bag to his cube to pack his property. (*Id.*) Plaintiff alleges that at this time, he thought that "count was clear" and that prisoners were able to use the phones. (*Id.*) Plaintiff was on the phone with his brother when Defendant Harris "slammed [him] chest first against the phone without any warning or command." (*Id.*) Plaintiff avers that Defendant Harris "seemed very angry"

2

and that he had "never had an issue with [Defendant] Harris or any other officer" until that day. (*Id.*)

Defendant Harris and Officer Demenov (not a party) escorted Plaintiff halfway to the control center, where another officer (not a party) took over, escorted Plaintiff to the control center, and placed him in a cell. (*Id.*) Defendant Harris threatened Plaintiff that if he filed any more grievances or lawsuits, Plaintiff would not "get out of prison." (*Id.*, PageID.4–5.) While in the holding cell, Defendant Schmidt came on as second-shift sergeant and "instantly told [Plaintiff that he] better not give him any 'f***ing problems.'" (*Id.*, PageID.5.)

Plaintiff asked to be checked for COVID-19, and he tested positive. (*Id.*) Plaintiff told Mrs. Bartrsum (not a party) that "there was a bathroom problem and that [he] need[ed] to clean [him]self." (*Id.*) Defendant Schmidt came in minutes later, yelling that Plaintiff "was going to Level-IV, and that there [were] no cameras, and that [Plaintiff] should hang [him]self." (*Id.*) Defendant Schmidt told Plaintiff that he would "get what [he] deserve[s] for suing his friends." (*Id.*)

Defendant Steiner and Officer Kohl (not a party) arrived at the control center and transported Plaintiff to segregation instead of Level-IV. (*Id.*) Defendant Steiner told Plaintiff that he "hoped that [he] had resisted so that he could beat [Plaintiff's] ass." (*Id.*) Defendant Steiner also told Plaintiff that if he continued to file frivolous lawsuits, he would make sure that Plaintiff never got out of prison. (*Id.*) Plaintiff was transported in a restraint chair "without any cause or reason." (*Id.*) Defendant Steiner also stated that Plaintiff "was a stalker, a sex-offender, and that he knew the name of the victim." (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his First and Eighth Amendment rights. As relief, Plaintiff seeks $750,000.00 in damages, as well as an "internal affairs

investigation." (*Id.*, PageID.3.) Plaintiff asks that federal officials "look into Carson City for the crimes that have been committed." (*Id.*)

## II.    Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    First Amendment Retaliation Claims

Plaintiff contends that all Defendants retaliated against him "due to the fact that [he has] current active lawsuits and that [he] continue[s] to write grievances exercising [his] First Amendment right." (ECF No. 1, PageID.5.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Protected Conduct

Filing a civil rights lawsuit constitutes protected conduct. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). Moreover, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected

status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). Plaintiff, therefore, clearly engaged in protected activity by filing a civil rights lawsuit and grievances.

### 2.     Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell*, 308 F.3d at 606 (emphasis in original).

In his complaint, Plaintiff alleges that Defendant Harris used excessive force against him by slamming him against the phone. (ECF No. 1, PageID.4.) The use of excessive force clearly qualifies as adverse action for purposes of a retaliation claim. Plaintiff also suggests that he was placed in segregation. (*Id.*, PageID.5.) Transfer to segregation can be sufficient to constitute adverse action. *See Hill*, 630 F.3d at 474–75.

Plaintiff also asserts that Defendants made various threats against him in retaliation for his protected conduct. A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g.*, *Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

Plaintiff contends that after he told Defendant Jones about his pending civil lawsuit and that he did not want any further problems with prisoner Vandyken, Defendant Jones "began to threaten [him] about [his] [c]ivil [s]uit, and that [Plaintiff] was an inmate, and that [Plaintiff] must do as [he is] told to do." (ECF No. 1, PageID.4.) Defendant Jones "was angry, and jumped out of his chair and lunged at [Plaintiff] as if he was going to assault [him]." (*Id.*)

Plaintiff also contends that Defendant Harris threatened that he would make sure that Plaintiff did not get out of prison if he continued to file grievances and lawsuits. (*Id.*, PageID.5.) Plaintiff also suggests that Defendant Schmidt told Plaintiff that he was going to Level-IV, where there were no cameras, and that Plaintiff should hang himself. (*Id.*) Defendant Schmidt also told Plaintiff that he would "get what [he] deserve[s] for suing his friends." (*Id.*) Finally, Plaintiff avers that Defendant Steiner, while transporting Plaintiff to segregation, told him that "he hoped that [Plaintiff] had resisted so that he could beat [Plaintiff's] ass." (*Id.*) Defendant Steiner also told Plaintiff that if he filed any more "frivolous lawsuits," he would make sure that Plaintiff never got out of prison. (*Id.*) Defendant Steiner also told Plaintiff that he "was a stalker, a sex-offender, and that he knew the name of the victim." (*Id.*)

Plaintiff's allegations regarding Defendants' threats fail to rise to the level of sufficient adverse action. With respect to Defendant Jones, Plaintiff fails to provide any allegations regarding the substance of his threats. Plaintiff also fails to provide any allegations to support a plausible belief that Defendant Jones intended to physically harm him. Moreover, the threats by Defendants Harris and Steiner to ensure that Plaintiff never left prison if he continued to file lawsuits and grievances, and the threat by Defendant Schmidt that Plaintiff would get what he deserved for suing his friends, are too vague to deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g., Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3

(6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (discussing that Defendant Golladay's threat that the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[--to 'get' a prisoner who files a grievance on Krause and 'steps out of line'--] is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . . Such a vague threat of unspecified harm falls short of adverse action.").

Finally, with respect to Defendant Steiner's other statements during the transport to segregation, Plaintiff fails to allege any facts suggesting that Defendant Steiner intended to physically harm him. Specifically, Plaintiff alleges neither that Defendant Steiner had previously physically beaten him nor that Defendant Steiner implied how, when, where, or to what extent he would physically harm Plaintiff. Plaintiff merely alleges that Defendant Steiner made a vague statement hoping that Plaintiff would resist so he could "beat" him. He also alleges that Defendant Steiner called him a stalker and a sex offender. However, the law is clear that verbal harassment and minor threats do not rise to the level of adverse action. *See Thaddeus-X*, 175 F.3d at 398 (stating that "certain threats or deprivations are so de minimis that they do not rise to the level of

being constitutional violations"); *Smith v. Craven,* 61 Fed. Appx. 159, 162 (6th Cir. 2003) (finding that verbal harassment and minor threats were insufficient to state adverse actions that could deter a person of ordinary firmness from engaging in protected conduct); *Carney v. Craven,* 40 Fed. Appx. 48, 50 (6th Cir. 2002) (same).

In sum, Defendants' threats fail to satisfy the adverse action element required to advance a retaliation claim. Defendants' statements are simply too vague and ambiguous to deter prisoners of ordinary firmness from filing grievances and lawsuits.

### 3.      Retaliatory Motive

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

As noted above, the use of excessive force and a transfer to segregation do qualify as adverse actions. Plaintiff's complaint, however, is devoid of any allegations connecting Defendant Harris's use of excessive force and his transfer to segregation to his protected conduct. Plaintiff alleges that Defendant Harris used excessive force against him **before** he made the threat to make

sure that Plaintiff never left prison if he continued to file grievances and lawsuits. Moreover, Plaintiff provides no facts from which the Court could infer that he was transferred to segregation because of his protected activity. Indeed, Plaintiff alleges that he tested positive for COVID-19 prior to his transfer. He also appears to suggest that he may have been using the telephone at a time when he should not have been using it. From the facts alleged by Plaintiff, it is plausible that he was placed in segregation because he had tested positive for COVID-19 as a quarantine measure or because he was using the phone when he should not have been, not because of his protected activity.

In sum, Plaintiff fails to set forth a plausible First Amendment retaliation claim against any Defendant. Such claims will, therefore, be dismissed.

### B.    Eighth Amendment Excessive Force Claim

Plaintiff also contends that Defendant Harris violated his Eighth Amendment rights by using excessive force against him. (ECF No. 1, PageID.5.) The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Id.* at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights" (internal quotation marks omitted)). On occasion, "[t]he maintenance of prison security and discipline may require

that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)), *quoted in Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotations omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would

11

permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

As noted above, Plaintiff alleges that Defendant Harris came up behind Plaintiff while he was on the phone with his brother and "slammed [him] chest first against the phone without any warning or command." (*Id.*, PageID.4.) Plaintiff suggests that "[c]ameras will prove [his] description of this event and will show that [he] gave [Defendant] Harris no struggle nor resisted." (*Id.*) While Plaintiff does not allege that he suffered any injury from Defendant Harris's actions, lack of injury is not dispositive of whether a use of excessive force has occurred. *Wilkins*, 559 U.S. at 37. Plaintiff's allegations suffice to state a claim that Defendant Harris used excessive force against him.[1]

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Jones, Steiner, and Schmidt will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment retaliation claim against Defendant Harris. Plaintiff's Eighth Amendment excessive force claim against Defendant Harris remains in the case.

---

[1] Plaintiff vaguely mentions that Defendant Steiner and Officer Kohl placed him a restraint chair "without any cause or reason" to transport him to segregation. (ECF No. 1, PageID.5.) Plaintiff does not explicitly indicate that he is bringing an Eighth Amendment claim against Defendant Steiner for use of the restraint chair. Nevertheless, nothing in the complaint suggests that Plaintiff was held in the restraint chair for a lengthy period of time such that his Eighth Amendment rights could be implicated. Nothing in the complaint suggests that Defendant Steiner acted maliciously and sadistically by using the restraint chair. *Hudson*, 503 U.S. at 9. Accordingly, any Eighth Amendment claim against Defendant Steiner premised upon use of the restraint chair is subject to dismissal.

An order consistent with this opinion will be entered.


Dated:   May 19, 2022                              /s/ Jane M. Beckering
                                                   Jane M. Beckering
                                                   United States District Judge