UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH HEDLUND,

        Plaintiff,

v.

UNKNOWN JONES, *et al*.,

        Defendants.
_____/

Case No. 1:22-cv-355

Hon. Jane M. Beckering

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Keith Hedlund ("Hedlund") while he was a prisoner in the custody of the Michigan Department of Corrections (MDOC). It appears that he is no longer in prison. The only defendant left in this case is Corrections Officer John Harris. This matter is now before the Court on defendant Harris' motion for summary judgment on the basis of exhaustion (ECF No. 20).

    **I.**    **Hedlund's allegations**

The Court previously summarized Hedlund's claims for events which occurred at the Carson City Correctional Facility (DRF) providing in relevant part as follows:

> Plaintiff sues Prisoner Counselor Unknown Jones, Sergeant Unknown Schmidt, and Correctional Officers Unknown Harris and Unknown Steiner.
>
> Plaintiff alleges that on January 13, 2022, Defendant Jones informed inmates assigned to bunks #81, 84, and 86 that they would be moving from H-Unit Level I to G-Unit Level I, which was designated as a "Close Contact Unit." (ECF No. 1, PageID.4.) At the time, Plaintiff was assigned to bunk #84. (*Id*.) Plaintiff tried to explain to Defendant Jones that he could not lock in G-Unit because inmate Vandyken was there. (*Id*.) Inmate Vandyken had been moved to G-Unit on

1

December 5, 2021, a day after coming back to Level I. (*Id*.) Plaintiff told Defendant Jones that he had a "pending [c]ivil [s]uit and that [he] did not want any further problems with prisoner Vandyken." (*Id*.) Plaintiff avers that Defendant Jones began to threaten him about his civil suit, and told Plaintiff that he must do as he is told. (*Id*.) Defendant Jones was angry and "jumped out of his chair and lunged at [Plaintiff] as if he was going to assault" him. (*Id*.) Plaintiff left Defendant Jones' office and returned to his cube. (*Id*.)

Shortly after that incident, Plaintiff was called to move to Level II. (*Id*.) Plaintiff agreed and took a green duffel bag to his cube to pack his property. (*Id*.) Plaintiff alleges that at this time, he thought that "count was clear" and that prisoners were able to use the phones. (*Id*.) Plaintiff was on the phone with his brother when Defendant Harris "slammed [him] chest first against the phone without any warning or command." (*Id*.) Plaintiff avers that Defendant Harris "seemed very angry" and that he had "never had an issue with [Defendant] Harris or any other officer" until that day. (*Id*.)

Defendant Harris and Officer Demenov (not a party) escorted Plaintiff halfway to the control center, where another officer (not a party) took over, escorted Plaintiff to the control center, and placed him in a cell. (*Id*.) Defendant Harris threatened Plaintiff that if he filed any more grievances or lawsuits, Plaintiff would not "get out of prison." (*Id*., PageID.4-5.) While in the holding cell, Defendant Schmidt came on as second-shift sergeant and "instantly told [Plaintiff that he] better not give him any 'f***ing problems.'" (*Id*., PageID.5.) . . . .

Based on the foregoing, Plaintiff asserts violations of his First and Eighth Amendment rights.

Opinion (ECF No. 7, PageID.24-25). While the Court screened out most of plaintiff's claims on initial review, it found that "Plaintiff's Eighth Amendment excessive force claim against Defendant Harris remains in the case." *Id*. at PageID.34.

## II.    Legal standard

### A.    Summary judgment

Defendant Harris has moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

2

Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.  Lack of Exhaustion

#### 1.  Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See*

*Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ Q and S.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ W.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II

4

Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### III. Discussion

Here, defendant Harris reviewed Hedlund's grievance history and pointed out that Hedlund did not exhaust a grievance against Harris before filing this lawsuit. *See* Table (ECF No. 21, PageID.76); MDOC Prisoner Step III Grievance Report and copies of grievances (ECF No. 21-3). In his response, Hedlund states that he exhausted a grievance against defendant Harris, *i.e.*, Grievance DRF-22-01-203-17a ("203"). *See* Hedlund's Exh. (ECF No. 27-1, PageID.139-143). Harris points out that Hedlund did not properly exhaust this grievance before filing the lawsuit. Specifically, Hedlund did not file the Step III appeal until May 4, 2022, more than two weeks after he filed the complaint on April 18, 2022. *See* Compl. (ECF No. 1); Reply (ECF No. 30, PageID.150); Step III Grievance Report at PageID.98 (noting that the Step III appeal for Grievance 203 was received on "5/4/2022"); Grievance 203 Step III appeal (PageID.142). The record reflects that Grievance 203 was redesignated as DRF-22-01-203-*28e* and that the grievance was resolved at Step III on September 13, 2022, more than five months after Hedlund filed this lawsuit. *See* Grievance 203 (Step III Grievance Response Form) (PageID.143).

It is well established that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). Based on this record, Hedlund did not properly exhaust a grievance against defendant Harris before filing the complaint. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant Harris' motion for summary judgment should be granted.

### IV. Recommendation

For these reasons, I respectfully recommend that defendant Harris' motion for summary judgment summary judgment on the basis of exhaustion (ECF No. 20) be **GRANTED**.

Dated:  January 9, 2024                                   /s/ Ray Kent
                                                                              RAY KENT
                                                                              United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).